(Slip Opinion) OCTOBER TERM, 2017 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MARINELLO *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 16–1144. Argued December 6, 2017—Decided March 21, 2018

Between 2004 and 2009, the Internal Revenue Service (IRS) intermittently investigated petitioner Marinello's tax activities. In 2012, the Government indicted Marinello for violating, among other criminal tax statutes, a provision in 26 U. S. C. §7212(a) known as the Omnibus Clause, which forbids "corruptly or by force or threats of force . . . obstruct[ing] or imped[ing], or endeavor[ing] to obstruct or impede, the due administration of [the Internal Revenue Code]." The judge instructed the jury that, to convict Marinello of an Omnibus Clause violation, it must find that he "corruptly" engaged in at least one of eight specified activities, but the jury was not told that it needed to find that Marinello knew he was under investigation and intended corruptly to interfere with that investigation. Marinello was convicted. The Second Circuit affirmed, rejecting his claim that an Omnibus Clause violation requires the Government to show the defendant tried to interfere with a pending IRS proceeding, such as a particular investigation.

*Held*: To convict a defendant under the Omnibus Clause, the Government must prove the defendant was aware of a pending tax-related proceeding, such as a particular investigation or audit, or could reasonably foresee that such a proceeding would commence. Pp. 3–11.

(a) In *United States* v. *Aguilar*, 515 U. S. 593, this Court interpreted a similarly worded criminal statute—which made it a felony "corruptly or by threats or force . . . [to] influenc[e], obstruc[t], or imped[e], or endeavo[r] to influence, obstruct, or impede, the due administration of justice," 18 U. S. C. §1503(a). There, the Court required the Government to show there was a "nexus" between the defendant's obstructive conduct and a particular judicial proceeding. The Court said that the defendant's "act must have a relationship in

time, causation, or logic with the judicial proceedings." 515 U. S., at 599. In reaching this conclusion, the Court emphasized that it has "traditionally exercised restraint in assessing the reach of a federal criminal statute, both out of deference to the prerogatives of Congress and out of concern that 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.' " *Id.,* at 600. That reasoning applies here with similar strength. The verbs "obstruct" and "impede" require an object. The taxpayer must hinder a particular person or thing. The object in §7212(a) is the "due administration of [the Tax Code]." That phrase is best viewed, like the "due administration of justice" in *Aguilar*, as referring to discrete targeted administrative acts rather than every conceivable task involved in the Tax Code's administration. Statutory context confirms this reading. The Omnibus Clause appears in the middle of a sentence that refers to efforts to "intimidate or impede any officer or employee of the United States acting in an official capacity." §7212(a). The first part of the sentence also refers to "force or threats of force," which the statute elsewhere defines as "threats of bodily harm to the officer or employee of the United States or to a member of his family." *Ibid.* And §7212(b) refers to the "forcibl[e] rescu[e]" of "any property after it shall have been seized under" the Internal Revenue Code. Subsections (a) and (b) thus refer to corrupt or forceful actions taken against individual identifiable persons or property. In context, the Omnibus Clause logically serves as a "catchall" for the obstructive conduct the subsection sets forth, not for every violation that interferes with routine administrative procedures such as the processing of tax returns, receipt of tax payments, or issuance of tax refunds. The statute's legislative history does not suggest otherwise. The broader context of the full Internal Revenue Code also counsels against a broad reading. Interpreting the Omnibus Clause to apply to all Code administration could transform the Code's numerous misdemeanor provisions into felonies, making them redundant or perhaps the subject matter of plea bargaining. It could also result in a similar lack of fair warning and related kinds of unfairness that led this Court to "exercise" interpretive "restraint" in *Aguilar*. See 515 U. S., at 600. The Government claims that the "corrupt state of mind" requirement will cure any overbreadth problem, but it is difficult to imagine a scenario when that requirement will make a practical difference in the context of federal tax prosecutions. And to rely on prosecutorial discretion to narrow the otherwise wide-ranging scope of a criminal statute's general language places too much power in the prosecutor's hands. Pp. 3–9.

(b) Following the same approach taken in similar cases, the Government here must show that there is a "nexus" between the defend-

Syllabus

ant's conduct and a particular administrative proceeding, such as an investigation, an audit, or other targeted administrative action. See *Aguilar*, *supra,* at 599. The term "particular administrative proceeding" does not mean every act carried out by IRS employees in the course of their administration of the Tax Code. Just because a taxpayer knows that the IRS will review her tax return annually does not transform every Tax Code violation into an obstruction charge. In addition to satisfying the nexus requirement, the Government must show that the proceeding was pending at the time the defendant engaged in the obstructive conduct or, at the least, was then reasonably foreseeable by the defendant. See *Arthur Andersen LLP* v. *United States*, 544 U. S. 696, 703, 707–708. Pp. 9–11.

839 F. 3d 209, reversed and remanded.

BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, GINSBURG, SOTOMAYOR, KAGAN, and GORSUCH, JJ., joined. THOMAS, J., filed a dissenting opinion, in which ALITO, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 16–1144

### CARLO J. MARINELLO, II, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[March 21, 2018]

JUSTICE BREYER delivered the opinion of the Court.

A clause in §7212(a) of the Internal Revenue Code makes it a felony "corruptly or by force" to "endeavo[r] to obstruct or imped[e] the due administration of this title." 26 U. S. C. §7212(a). The question here concerns the breadth of that statutory phrase. Does it cover virtually all governmental efforts to collect taxes? Or does it have a narrower scope? In our view, "due administration of [the Tax Code]" does not cover routine administrative procedures that are near-universally applied to all taxpayers, such as the ordinary processing of income tax returns. Rather, the clause as a whole refers to specific interference with targeted governmental tax-related proceedings, such as a particular investigation or audit.

## I

The Internal Revenue Code provision at issue, §7212(a), has two substantive clauses. The first clause, which we shall call the "Officer Clause," forbids

"corruptly or by force or threats of force (including any threatening letter or communication) endeavor[ing] to intimidate or impede any *officer or employee* of the

United States acting in an official capacity under [the Internal Revenue Code]." *Ibid.* (emphasis added).

The second clause, which we shall call the "Omnibus Clause," forbids

"corruptly or by force or threats of force (including any threatening letter or communication) obstruct[ing] or imped[ing], or endeavor[ing] to obstruct or impede, *the due administration* of [the Internal Revenue Code]." *Ibid.* (emphasis added).

As we said at the outset, we here consider the scope of the Omnibus Clause. (We have placed the full text of §7212 in the Appendix, *infra.*)

Between 2004 and 2009, the Internal Revenue Service (IRS) opened, then closed, then reopened an investigation into the tax activities of Carlo Marinello, the petitioner here. In 2012 the Government indicted Marinello, charging him with violations of several criminal tax statutes including the Omnibus Clause. In respect to the Omnibus Clause the Government claimed that Marinello had engaged in at least one of eight different specified activities, including "failing to maintain corporate books and records," "failing to provide" his tax accountant "with complete and accurate" tax "information," "destroying . . . business records," "hiding income," and "paying employees . . . with cash." 839 F. 3d 209, 213 (CA2 2016).

Before the jury retired to consider the charges, the judge instructed it that, to convict Marinello of violating the Omnibus Clause, it must find unanimously that he engaged in at least one of the eight practices just mentioned, that the jurors need not agree on which one, and that he did so "corruptly," meaning "with the intent to secure an unlawful advantage or benefit, either for [himself] or for another." App. in No. 15–2224 (CA2), p. 432. The judge, however, did not instruct the jury that it must find that Marinello knew he was under investigation and intended

corruptly to interfere with that investigation. The jury subsequently convicted Marinello on all counts.

Marinello appealed to the Court of Appeals for the Second Circuit. He argued, among other things, that a violation of the Omnibus Clause requires the Government to show that the defendant had tried to interfere with a "pending IRS proceeding," such as a particular investigation. Brief for Appellant in No. 15–2224, pp. 23–25. The appeals court disagreed. It held that a defendant need not possess "'an awareness of a particular [IRS] action or investigation.'" 839 F. 3d, at 221 (quoting *United States* v. *Wood*, 384 Fed. Appx. 698, 704 (CA2 2010); alteration in original). The full Court of Appeals rejected Marinello's petition for rehearing, two judges dissenting. 855 F. 3d 455 (CA2 2017).

Marinello then petitioned for certiorari, asking us to decide whether the Omnibus Clause requires the Government to prove the defendant was aware of "a pending IRS action or proceeding, such as an investigation or audit," when he "engaged in the purportedly obstructive conduct." Pet. for Cert. i. In light of a division of opinion among the Circuits on this point, we granted the petition. Compare *United States* v. *Kassouf*, 144 F. 3d 952 (CA6 1998) (requiring showing of a pending proceeding), with 839 F. 3d, at 221 (disagreeing with *Kassouf* ).

II

In *United States* v. *Aguilar*, 515 U. S. 593 (1995), we interpreted a similarly worded criminal statute. That statute made it a felony "corruptly or by threats or force, or by any threatening letter or communication, [to] influenc[e], obstruc[t], or imped[e], or endeavo[r] to influence, obstruct, or impede, the due administration of justice." 18 U. S. C. §1503(a). The statute concerned not (as here) "the due administration of" *the Internal Revenue Code* but rather "the due administration of *justice*." (We have

placed the full text of §1503 in the Appendix, *infra*.)

In interpreting that statute we pointed to earlier cases in which courts had held that the Government must prove "an intent to influence judicial or grand jury proceedings." *Aguilar*, *supra,* at 599 (citing *United States* v. *Brown*, 688 F. 2d 596, 598 (CA9 1982)). We noted that some courts had imposed a "'nexus' requirement": that the defendant's "act must have a relationship in time, causation, or logic with the judicial proceedings." *Aguilar*, *supra,* at 599 (citing *United States* v. *Wood*, 6 F. 3d 692, 696 (CA10 1993), and *United States* v. *Walasek*, 527 F. 2d 676, 679, and n. 12 (CA3 1975)). And we adopted the same requirement.

We set forth two important reasons for doing so. We wrote that we "have traditionally exercised restraint in assessing the reach of a federal criminal statute, both out of deference to the prerogatives of Congress and out of concern that 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.'" *Aguilar*, *supra,* at 600 (quoting *McBoyle* v. *United States*, 283 U. S. 25, 27 (1931); citation omitted). Both reasons apply here with similar strength.

As to Congress' intent, the literal language of the statute is neutral. The statutory words "obstruct or impede" are broad. They can refer to anything that "block[s]," "make[s] difficult," or "hinder[s]." Black's Law Dictionary 1246 (10th ed. 2014) (obstruct); Webster's New International Dictionary (Webster's) 1248 (2d ed. 1954) (impede); *id.,* at 1682 (obstruct); accord, 5 Oxford English Dictionary 80 (1933) (impede); 7 *id.,* at 36 (obstruct). But the verbs "obstruct" and "impede" suggest an object—the taxpayer must hinder a particular person or thing. Here, the object is the "due administration of this title." The word "administration" can be read literally to refer to every "[a]ct or process of administering" including every act of "manag-

ing" or "conduct[ing]" any "office," or "performing the executive duties of" any "institution, business, or the like." Webster's 34. But the whole phrase—the due administration of the Tax Code—is best viewed, like the due administration of justice, as referring to only some of those acts or to some separable parts of an institution or business. Cf. *Aguilar*, *supra,* at 600–601 (concluding false statements made to an investigating agent, rather than a grand jury, do not support a conviction for obstruction of justice).

Here statutory context confirms that the text refers to specific, targeted acts of administration. The Omnibus Clause appears in the middle of a statutory sentence that refers specifically to efforts to "intimidate or impede *any officer or employee of the United States* acting in an official capacity." 26 U. S. C. §7212(a) (emphasis added). The first part of the sentence also refers to "force or threats of force," which the statute elsewhere defines as "threats of bodily harm to the *officer or employee of the United States or to a member of his family*." *Ibid.* (emphasis added). The following subsection refers to the "forcibl[e] rescu[e]" of "any *property* after it shall have been seized under" the Internal Revenue Code. §7212(b) (emphasis added). Subsections (a) and (b) thus refer to corrupt or forceful actions taken against individual identifiable persons or property. And, in that context the Omnibus Clause logically serves as a "catchall" in respect to the obstructive conduct the subsection sets forth, not as a "catchall" for every violation that interferes with what the Government describes as the "continuous, ubiquitous, and universally known" administration of the Internal Revenue Code. Brief in Opposition 9.

Those who find legislative history helpful can find confirmation of the more limited scope of the Omnibus Clause in the House and Senate Reports written when Congress first enacted the Omnibus Clause. See H. R. Rep. No.

1337, 83d Cong., 2d Sess. (1954); S. Rep. No. 1622, 83d Cong., 2d Sess. (1954). According to the House Report, §7212 "provides for the punishment of threats or threatening acts against *agents* of the Internal Revenue Service, or any other *officer* or *employee* of the United States, or *members of the families of such persons,* on account of the performance by such agents or officers or employees of their official duties" and "*will also punish the corrupt solicitation of an internal revenue employee.*" H. R. Rep. No. 1337, at A426 (emphasis added). The Senate Report also refers to the section as aimed at targeting officers and employees. It says that §7212 "covers all cases where the *officer* is intimidated or injured; *that is*, where corruptly, by force or threat of force, directly or by communication, an attempt is made to impede the administration of the internal-revenue laws." S. Rep. No. 1622, at 147 (emphasis added). We have found nothing in the statute's history suggesting that Congress intended the Omnibus Clause as a catchall applicable to the entire Code including the routine processing of tax returns, receipt of tax payments, and issuance of tax refunds.

Viewing the Omnibus Clause in the broader statutory context of the full Internal Revenue Code also counsels against adopting the Government's broad reading. That is because the Code creates numerous misdemeanors, ranging from willful failure to furnish a required statement to employees, §7204, to failure to keep required records, §7203, to misrepresenting the number of exemptions to which an employee is entitled on IRS Form W–4, §7205, to failure to pay any tax owed, however small the amount, §7203. To interpret the Omnibus Clause as applying to all Code administration would potentially transform many, if not all, of these misdemeanor provisions into felonies, making the specific provisions redundant, or perhaps the subject matter of plea bargaining. Some overlap in criminal provisions is, of course, inevitable. See, *e.g., Sansone*

v. *United States*, 380 U. S. 343, 349 (1965) (affirming conviction for tax evasion despite overlap with other provisions). Indeed, as the dissent notes, *post,* at 8 (opinion of THOMAS, J.), Marinello's preferred reading of §7212 potentially overlaps with another provision of federal law that criminalizes the obstruction of the "due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States," 18 U. S. C. §1505. But we have not found any case from this Court interpreting a statutory provision that would create overlap and redundancy to the degree that would result from the Government's broad reading of §7212—particularly when it would "'render superfluous other provisions in the same enactment.'" *Freytag* v. *Commissioner*, 501 U. S. 868, 877 (1991) (quoting *Pennsylvania Dept. of Public Welfare* v. *Davenport*, 495 U. S. 552, 562 (1990); see also *Yates* v. *United States*, 574 U. S. \_\_\_, \_\_\_ (2015) (plurality opinion) (slip op., at 13).

A broad interpretation would also risk the lack of fair warning and related kinds of unfairness that led this Court in *Aguilar* to "exercise" interpretive "restraint." See 515 U. S., at 600; see also *Yates*, *supra,* at \_\_\_–\_\_\_ (slip op., at 18–19); *Arthur Andersen LLP* v. *United States*, 544 U. S. 696, 703–704 (2005). Interpreted broadly, the provision could apply to a person who pays a babysitter $41 per week in cash without withholding taxes, see 26 CFR §31.3102–1(a)(2017); IRS, Publication 926, pp. 5–6 (2018), leaves a large cash tip in a restaurant, fails to keep donation receipts from every charity to which he or she contributes, or fails to provide every record to an accountant. Such an individual may sometimes believe that, in doing so, he is running the risk of having violated an IRS rule, but we sincerely doubt he would believe he is facing a potential felony prosecution for tax obstruction. Had Congress intended that outcome, it would have spoken with more clarity than it did in §7212(a).

The Government argues that the need to show the defendant's obstructive conduct was done "corruptly" will cure any overbreadth problem. But we do not see how. The Government asserts that "corruptly" means acting with "the specific intent to obtain an unlawful advantage" for the defendant or another. See Tr. of Oral Arg. 37; accord, 839 F. 3d, at 218. Yet, practically speaking, we struggle to imagine a scenario where a taxpayer would "willfully" violate the Tax Code (the *mens rea* requirement of various tax crimes, including misdemeanors, see, *e.g.,* 26 U. S. C. §§7203, 7204, 7207) without intending someone to obtain an unlawful advantage. See *Cheek* v. *United States*, 498 U. S. 192, 201 (1991) ("Willfulness . . . requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty") A taxpayer may know with a fair degree of certainty that her babysitter will not declare a cash payment as income—and, if so, a jury could readily find that the taxpayer acted to obtain an unlawful benefit for another. For the same reason, we find unconvincing the dissent's argument that the distinction between "willfully" and "corruptly"—at least as defined by the Government—reflects any meaningful difference in culpability. See *post,* at 6–7.

Neither can we rely upon prosecutorial discretion to narrow the statute's scope. True, the Government used the Omnibus Clause only sparingly during the first few decades after its enactment. But it used the clause more often after the early 1990's. Brief for Petitioner 9. And, at oral argument the Government told us that, where more punitive and less punitive criminal provisions both apply to a defendant's conduct, the Government will charge a violation of the more punitive provision as long as it can readily prove that violation at trial. Tr. of Oral Arg. 46–47, 55–57; see Office of the Attorney General, Department Charging and Sentencing Policy (May 10,

2017), online at http://www.justice.gov/opa/press-release/ file/965896/download (as last visited Mar. 16, 2018).

Regardless, to rely upon prosecutorial discretion to narrow the otherwise wide-ranging scope of a criminal statute's highly abstract general statutory language places great power in the hands of the prosecutor. Doing so risks allowing "policemen, prosecutors, and juries to pursue their personal predilections," *Smith* v. *Goguen*, 415 U. S. 566, 575 (1974), which could result in the nonuniform execution of that power across time and geographic location. And insofar as the public fears arbitrary prosecution, it risks undermining necessary confidence in the criminal justice system. That is one reason why we have said that we "cannot construe a criminal statute on the assumption that the Government will 'use it responsibly.'" *McDonnell* v. *United States*, 579 U. S. \_\_\_, \_\_\_ (2016) (slip op., at 23) (quoting *United States* v. *Stevens*, 559 U. S. 460, 480 (2010)). And it is why "[w]e have traditionally exercised restraint in assessing the reach of a federal criminal statute." *Aguilar*, *supra,* at 600.

### III

In sum, we follow the approach we have taken in similar cases in interpreting §7212(a)'s Omnibus Clause. To be sure, the language and history of the provision at issue here differ somewhat from that of other obstruction provisions we have considered in the past. See *Aguilar, supra* (interpreting a statute prohibiting the obstruction of "the due administration of justice"); *Arthur Andersen*, *supra* (interpreting a statute prohibiting the destruction of an object with intent to impair its integrity or availability for use in an official proceeding); *Yates, supra* (interpreting a statute prohibiting the destruction, concealment, or covering up of any "record, document, or tangible object with the intent to" obstruct the "investigation or proper administration of any matter within the jurisdiction of any

department or agency of the United States"). The Government and the dissent urge us to ignore these precedents because of those differences. The dissent points out, for example, that the predecessor to the obstruction statute we interpreted in *Aguilar*, 18 U. S. C. §1503, prohibited influencing, intimidating, or impeding "any witness or officer in any court of the United States" or endeavoring "to obstruct or imped[e] the due administration of justice *therein*." *Pettibone* v. *United States*, 148 U. S. 197, 202 (1893) (citing Rev. Stat. §5399; emphasis added); see *post,* at 9. But Congress subsequently deleted the word "therein," leaving only a broadly worded prohibition against obstruction of "the due administration of justice." Act of June 25, 1948, §1503, 62 Stat. 769–770. Congress then used that same amended formulation when it enacted §7212, prohibiting the "obstruction of the due administration" of the Tax Code. Internal Revenue Code of 1954, 68A Stat. 855. Given this similarity, it is helpful to consider how we have interpreted §1503 and other obstruction statutes in considering §7212. The language of some and the underlying principles of all these cases are similar. We consequently find these precedents—though not controlling—highly instructive for use as a guide toward a proper resolution of the issue now before us. See *Smith* v. *City of Jackson*, 544 U. S. 228, 233 (2005).

We conclude that, to secure a conviction under the Omnibus Clause, the Government must show (among other things) that there is a "nexus" between the defendant's conduct and a particular administrative proceeding, such as an investigation, an audit, or other targeted administrative action. That nexus requires a "relationship in time, causation, or logic with the [administrative] proceeding." *Aguilar*, 515 U. S., at 599 (citing *Wood*, 6 F. 3d, at 696). By "particular administrative proceeding" we do not mean every act carried out by IRS employees in the course of their "continuous, ubiquitous, and universally

known" administration of the Tax Code. Brief in Opposition 9. While we need not here exhaustively itemize the types of administrative conduct that fall within the scope of the statute, that conduct does not include routine, day-to-day work carried out in the ordinary course by the IRS, such as the review of tax returns. The Government contends the processing of tax returns is part of the administration of the Internal Revenue Code and any corrupt effort to interfere with that task can therefore serve as the basis of an obstruction conviction. But the same could have been said of the defendant's effort to mislead the investigating agent in *Aguilar*. The agent's investigation was, at least in some broad sense, a part of the administration of justice. But we nevertheless held the defendant's conduct did not support an obstruction charge. 515 U. S., at 600. In light of our decision in *Aguilar,* we find it appropriate to construe §7212's Omnibus Clause more narrowly than the Government proposes. Just because a taxpayer knows that the IRS will review her tax return every year does not transform every violation of the Tax Code into an obstruction charge.

In addition to satisfying this nexus requirement, the Government must show that the proceeding was pending at the time the defendant engaged in the obstructive conduct or, at the least, was then reasonably foreseeable by the defendant. See *Arthur Andersen*, 544 U. S*.,* at 703, 707–708 (requiring the Government to prove a proceeding was foreseeable in order to convict a defendant for persuading others to shred documents to prevent their "use in an official proceeding"). It is not enough for the Government to claim that the defendant knew the IRS may catch on to his unlawful scheme eventually. To use a maritime analogy, the proceeding must at least be in the offing.

For these reasons, the Second Circuit's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

APPENDIX

**26 U. S. C. §7212: "Attempts to interfere with administration of internal revenue laws**

**"(a) Corrupt or forcible interference**

"Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both, except that if the offense is committed only by threats of force, the person convicted thereof shall be fined not more than $3,000, or imprisoned not more than 1 year, or both. The term 'threats of force', as used in this subsection, means threats of bodily harm to the officer or employee of the United States or to a member of his family.

**"(b) Forcible rescue of seized property**

"Any person who forcibly rescues or causes to be rescued any property after it shall have been seized under this title, or shall attempt or endeavor so to do, shall, excepting in cases otherwise provided for, for every such offense, be fined not more than $500, or not more than double the value of the property so rescued, whichever is the greater, or be imprisoned not more than 2 years."

**18 U. S. C. §1503: "Influencing or injuring officer or juror generally**

"(a) Whoever corruptly, or by threats or force, or by any

threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b). If the offense under this section occurs in connection with a trial of a criminal case, and the act in violation of this section involves the threat of physical force or physical force, the maximum term of imprisonment which may be imposed for the offense shall be the higher of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case.

"(b) The punishment for an offense under this section is—

"(1) in the case of a killing, the punishment provided in sections 1111 and 1112;

"(2) in the case of an attempted killing, or a case in which the offense was committed against a petit juror and in which a class A or B felony was charged, imprisonment for not more than 20 years, a fine under this title, or both; and

"(3) in any other case, imprisonment for not more than 10 years, a fine under this title, or both."

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–1144

_____

## CARLO J. MARINELLO, II, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[March, 21 2018]

JUSTICE THOMAS, with whom JUSTICE ALITO joins, dissenting.

The Omnibus Clause of 26 U. S. C. §7212(a) of the Internal Revenue Code (Tax Code) makes it a felony to "corruptly . . . endeavo[r] to obstruct or imped[e] the due administration of this title." "[T]his title" refers to Title 26, which contains the entire Tax Code and authorizes the Internal Revenue Service (IRS) to calculate, assess, and collect taxes. I would hold that the Omnibus Clause does what it says: forbid corrupt efforts to impede the IRS from performing any of these activities. The Court, however, reads "this title" to mean "a particular [IRS] proceeding." *Ante,* at 10. And that proceeding must be either "pending" or "in the offing." *Ante,* at 11. The Court may well prefer a statute written that way, but that is not what Congress enacted. I respectfully dissent.

I

Petitioner Carlo J. Marinello, II, owned and managed a company that provided courier services. Marinello, however, kept almost no records of the company's earnings or expenditures. He shredded or discarded most business records. He paid his employees in cash and did not give them tax documents. And he took tens of thousands of dollars from the company each year to pay his personal

expenses.

Unbeknownst to Marinello, the IRS began investigating him in 2004. The IRS learned that he had not filed a tax return—corporate or individual—since at least 1992. But the investigation came to a standstill because the IRS did not have enough information about Marinello's earnings. This was not surprising given his diligent efforts to avoid creating a paper trail. After the investigation ended, Marinello consulted a lawyer and an accountant, both of whom advised him that he needed to file tax returns and keep business records. Despite these warnings, Marinello did neither for another four years.

In 2009, the IRS decided to investigate Marinello again. In an interview with an IRS agent, Marinello initially claimed he was exempt from filing tax returns because he made less than $1,000 per year. Upon further questioning, however, Marinello changed his story. He admitted that he earned more than $1,000 per year, but said he "'never got around'" to paying taxes. 839 F. 3d 209, 212 (CA2 2016). He also admitted that he shredded documents, did not keep track of the company's income or expenses, and used the company's income for personal bills. His only excuse was that he "took the easy way out." *Ibid.* After just a few hours of deliberation, a jury convicted Marinello of corruptly endeavoring to obstruct or impede the due administration of the Tax Code, §7212(a).

## II

Section 7212(a)'s Omnibus Clause prohibits "corruptly . . . obstruct[ing] or imped[ing], or endeavor[ing] to obstruct or impede, the due administration of this title." I agree with the Court's interpretations of "obstruct or impede" and "due administration," which together refer to conduct that hinders the IRS' performance of its official duties. See *ante*, at 4–5. I also agree that the object of these words—the thing a person is prohibited from ob-

structing the due administration of—is "this title," *i.e.,* Title 26, which contains the entire Tax Code. See *ante,* at 4. But I part ways when the Court concludes that the whole phrase "due administration of the Tax Code" means "only some of" the Tax Code—specifically "particular [IRS] proceeding[s], such as an investigation, an audit, or other targeted administrative action." *Ante,* at 5, 10. That limitation has no basis in the text. In my view, the plain text of the Omnibus Clause prohibits obstructing the due administration of the Tax Code in its entirety, not just particular IRS proceedings.

## A

The words "this title" cannot be read to mean "only some of this title." As this Court recently reiterated, phrases such as "this title" most naturally refer to the cited provision "as a whole." *Rubin* v. *Islamic Republic of Iran*, 583 U. S. \_\_\_, \_\_\_ (2018) (slip op., at 8). Congress used "this title" throughout Title 26 to refer to the Tax Code in its entirety. See, *e.g.,* §7201 ("[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title"); §7203 ("[a]ny person required under this title to pay any estimated tax or tax, or required by this title . . . to make a return, keep any records, or supply any information, who willfully fails to [do so]"). And, "[w]hen Congress wanted to refer only to a particular subsection or paragraph, it said so." *NLRB* v. *SW General, Inc.*, 580 U. S. \_\_\_, \_\_\_ (2017) (slip op., at 9); see, *e.g.,* §7204 (criminalizing willfully failing to furnish a statement "required under section 6051"); §7207 (criminalizing willfully furnishing fraudulent or materially false information "required pursuant to section 6047(b), section 6104(d), or subsection (i) or (j) of section 527"); §7210 (criminalizing neglecting to appear or produce documents "required under section 6420(e)(2), 6421(g)(2), 6427(j)(2), 7602, 7603, and 7604(b)"). Thus, "this title" must refer to

the Tax Code as a whole.

The phrase "due administration of this title" likewise refers to the due administration of the entire Tax Code. As this Court has recognized, "administration" of the Tax Code includes four basic steps: information gathering, assessment, levy, and collection. See *Direct Marketing Assn.* v. *Brohl*, 575 U. S. \_\_\_, \_\_\_–\_\_\_ (2015) (slip op., at 6–7). The first "phase of tax administration procedure" is "information gathering." *Id.,* at \_\_\_ (slip op., at 6); see, *e.g.,* §§6001–6096. "This step includes private reporting of information used to determine tax liability, including reports by third parties who do not owe the tax." *Id.*, at \_\_\_ (slip op., at 6) (citation omitted). The "next step in the process" is "assessment," which includes "the process by which [a taxpayer's liability] is calculated" and the "official recording of a taxpayer's liability." *Id.,* at \_\_\_ (slip op., at 6); see, *e.g.,* §§6201–6241. After information gathering and assessment come "levy" and "collection." See *id.,* at \_\_\_ (slip op., at 7); see, *e.g.,* §§6301–6344. Levy refers to "a specific mode of collection under which the Secretary of the Treasury distrains and seizes a recalcitrant taxpayer's property." *Id.,* at \_\_\_ (slip op., at 7). Collection refers to "the act of obtaining payment of taxes due." *Ibid.*

Subtitle F of the Tax Code—titled "Procedure and Administration"—contains directives related to each of these steps. It requires taxpayers to keep certain records and file certain returns, §6001; specifies that taxpayers with qualifying incomes must file returns, §6012; and authorizes the Secretary of the Treasury to create returns for taxpayers who fail to file returns or who file fraudulent ones, §6020. It requires the Secretary to make inquiries, determinations, and assessments of tax liabilities. §6201. And it authorizes the Secretary to collect and levy taxes. §§6301, 6331. Subtitle F also gives the Secretary the power to commence proceedings to recover unpaid taxes or fees, §§7401–7410, and to conduct investigations into the

accuracy of particular returns, §§7601–7613.

Accordingly, the phrase "due administration of this title" refers to the entire process of taxation, from gathering information to assessing tax liabilities to collecting and levying taxes. It is not limited to only a few specific provisions within the Tax Code.

B

The Court rejects this straightforward reading, describing the "literal language" of the Omnibus Clause as "neutral." *Ante*, at 4. It concludes that the statute prohibits only acts related to a pending or imminent proceeding. *Ante,* at 10–11. There is no textual or contextual support for this limitation.

The text of the Omnibus Clause is not "neutral"; it omits the limitation that the Court reads into it. The Omnibus Clause nowhere suggests that "only some of" the processes in the Tax Code are covered, *ante,* at 5, or that the line between covered and uncovered processes is drawn at some vague notion of "proceeding." The Omnibus Clause does not use the word "proceeding" at all, but instead refers to the entire Tax Code, which covers much more than that. This Court cannot "lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply." *Jama* v. *Immigration and Customs Enforcement*, 543 U. S. 335, 341 (2005).

Having failed to find its proposed limit in the text, the Court turns to context. However, its two contextual arguments fare no better.

First, the Court contends that the Omnibus Clause must be limited to pending or imminent proceedings because the other clauses of §7212 are limited to actions "taken against individual identifiable persons or property." *Ante*, at 5. But specific clauses in a statute typically do not limit the scope of a general omnibus clause. See *Ali* v. *Federal Bureau of Prisons*, 552 U. S. 214, 225 (2008) (explaining

that the *ejusdem generis* canon does not apply to a "disjunctive" phrase in a statute "with one specific and one general category"). Nor do the other clauses in §7212 contain the pending-or-imminent-proceeding requirement that the Court reads into the Omnibus Clause. See §7212(a) (prohibiting efforts to "intimidate or impede any officer or employee of the United States acting in an official capacity"); §7212(b) (prohibiting "forcibly rescu[ing] or caus[ing] to be rescued any property after it shall have been seized under this title"). They thus provide no support for the Court's atextual limitation.

Second, the Court asserts that its reading prevents the Omnibus Clause from overlapping with certain misdemeanors in the Tax Code. *Ante*, at 6–7 (discussing §§7203, 7204, 7205). But there is no redundancy problem because these provisions have different *mens rea* requirements. The Omnibus Clause requires that an act be done "corruptly," but the misdemeanor provisions require that an act be done "willfully." The difference between these *mens rea* requirements is significant. While "willfully" requires proof only "that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty," *Cheek* v. *United States*, 498 U. S. 192, 201 (1991), "corruptly" requires proof that the defendant "act[ed] with an intent to procure an unlawful benefit either for [himself] or for some other person," *United States* v. *Floyd*, 740 F. 3d 22, 31 (CA1 2014) (collecting cases); see also Black's Law Dictionary 414 (rev. 4th ed. 1951) ("corruptly" "generally imports a wrongful design to acquire some pecuniary or other advantage"). In other words, "corruptly" requires proof that the defendant not only knew he was obtaining an "unlawful benefit" but that his "objective" or "purpose" was to obtain that unlawful benefit. See 21 Am. Jur. 2d, Criminal Law §114 (2016) (explaining that specific intent requires both knowledge and purpose).

The Court dismisses the significance of the different *mens rea* requirements, see *ante*, at 8, but this difference is important under basic principles of criminal law. The law recognizes that the same conduct, when committed with a higher *mens rea*, is more culpable and thus more deserving of punishment. See *Schad* v. *Arizona*, 501 U. S. 624, 643 (1991) (plurality opinion). For that reason, different *mens rea* requirements often differentiate culpability for the same conduct. See, *e.g.,* 40 C. J. S., Homicide §80 (2014) (explaining that the distinction between first- and second-degree murder is based on the defendant's state of mind); §103 (same for voluntary and involuntary manslaughter). Unless the Court means to cast doubt on this well-established principle, it should not casually dismiss the different *mens rea* requirements in the Omnibus Clause and the various misdemeanors in the Tax Code.

Even if the Omnibus Clause did overlap with these other misdemeanors, that would prove little. For better or worse, redundancy abounds in both the criminal law and the Tax Code. This Court has repeatedly declined to depart from the plain meaning of the text simply because the same conduct would be criminalized under two or more provisions. See, *e.g., Loughrin* v. *United States*, 573 U. S. \_\_\_, \_\_\_, n. 4 (2014) (slip op., at 7, n. 4) ("No doubt, the overlap between the two clauses is substantial on our reading, but that is not uncommon in criminal statutes"); *Hubbard* v. *United States*, 514 U. S. 695, 714, n. 14 (1995) ("Congress may, and often does, enact separate criminal statutes that may, in practice, cover some of the same conduct"); *Sansone* v. *United States*, 380 U. S. 343, 352 (1965) (allowing the Government to proceed on a felony tax evasion charge even though that charge "'covered precisely the same ground'" as two misdemeanors in the Tax Code). In fact, the Court's interpretation of the Omnibus Clause does not eliminate the redundancy. Certain

misdemeanor offenses in the Tax Code—such as failing to
obey a summons, §7210—apply to conduct that takes place
during a proceeding and, thus, would still violate the
Omnibus Clause under the Court's interpretation.  The
Court's interpretation also makes the Omnibus Clause
largely redundant with 18 U. S. C. §1505, which already
prohibits "corruptly . . . endeavor[ing] to influence, ob-
struct, or impede the due and proper administration of the
law under which any pending proceeding is being had
before any department or agency of the United States."
Avoiding redundancy is thus not a reason to favor the
Court's interpretation.  Cf. *Marx* v. *General Revenue Corp.*,
568 U. S. 371, 385 (2013) ("[T]he canon against surplusage
'assists only where a competing interpretation gives effect
to every clause and word of a statute'").*

C

The Court contends that its narrow reading of "due
administration of this title" is supported by three decisions
interpreting other obstruction statutes, though it admits
that the "language and history" of the Omnibus Clause
"differ somewhat" from those other obstruction provisions.
*Ante*, at 9 (citing *United States* v. *Aguilar*, 515 U. S. 593
(1995); *Arthur Andersen LLP* v. *United States*, 544 U. S.
696 (2005); *Yates* v. *United States*, 574 U. S. ___ (2015)

---

 *The Court also relies on legislative history to support its interpreta-
tion.  See *ante,* at 5–6.  Even assuming legislative history could impose
a requirement that does not appear in the text, the Court cites nothing
in the legislative history that limits the Omnibus Clause to proceed-
ings—or even uses the word "proceeding."   In fact, the legislative
history does not say anything at all about the Omnibus Clause.  As
Marinello concedes, the vague snippets of legislative history that the
Court cites are discussing a different portion of 26 U. S. C. §7212(a),
involving threats against IRS officers and their family members.  See
Reply Brief 11 ("The conceded focus of §7212(a)'s legislative history was
the *officers* clause" and it was "relative[ly] silen[t] regarding [the
Omnibus Clause]").

(plurality opinion)). "[D]iffer somewhat" is putting it lightly. The differences between the Omnibus Clause and those other obstruction statutes demonstrate why the former does not contain the Court's proceeding requirement.

*Aguilar* interpreted 18 U. S. C. §1503. The omnibus clause of §1503 forbids corruptly endeavoring to obstruct "the due administration of justice." The Court concluded that this language requires the prosecution to prove a "nexus" between the defendant's obstructive act and "judicial proceedings." 515 U. S., at 599–600. But this nexus requirement was based on the specific history of §1503. The predecessor to that statute prohibited obstructing "the due administration of justice" "in any *court* of the United States." *Pettibone* v. *United States*, 148 U. S. 197, 202 (1893) (citing Rev. Stat. §5399). Based on this statutory history, the Court assumed that §1503 continued to refer to the administration of justice in a court. *Aguilar, supra,* at 599. None of that history is present here.

*Arthur Anderson* is even further afield. There the Court interpreted 18 U. S. C. §1512(b)(2)(A), which prohibits "knowingly . . . corruptly persuad[ing] another person . . . with intent to . . . cause or induce [that] person to . . . withhold testimony, or withhold a record, document, or other object, from an official proceeding." Relying on *Aguilar*, the Court concluded that §1512(b)(2)(A) required the Government to show a "nexus" with "[a] particular proceeding." 544 U. S., at 707–708. But this nexus requirement came from the statutory text, which expressly included "an official proceeding." If anything, then, §1512(b)(2)(A) cuts against the Court's interpretation of the Omnibus Clause because it shows that Congress knows how to impose a "proceeding" requirement when it wants to do so. See *Kucana* v. *Holder*, 558 U. S. 233, 248 (2010); *Jama*, 543 U. S., at 341.

*Yates* underscores this point. There the Court inter-

preted 18 U. S. C. §1519, which prohibits obstructing "the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States."  The four Justices in the plurality recognized that this language made §1519 broader than other obstruction statutes: Section 1519 "covers conduct intended to impede any federal investigation or proceeding, including one not even on the verge of commencement."  574 U. S., at ___ (slip op., at 18).  The plurality contrasted the term "official proceeding" with the phrase "investigation or proper administration of any matter within the jurisdiction of any department or agency," noting that the latter is broader.  *Id.,* at ___–___ (slip op., at 12–13).  The same is true for the broad language of the Omnibus Clause.

In sum, these cases demonstrate that, when text and history justify it, this Court interprets obstruction statutes to include a proceeding requirement.  But we have never inserted such a requirement into an obstruction statute without textual or historical support.  Today the Court does precisely that.

### D

All else having failed, the Court invokes lenity-sounding concerns to justify reading its proceeding requirement into the Omnibus Clause.  See *ante*, at 4, 7.  But the rule of lenity applies only if after applying ordinary tools of statutory interpretation, "there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended."  *Barber* v. *Thomas*, 560 U. S. 474, 488 (2010) (citation and internal quotation marks omitted).  The Court identifies no such grievous ambiguity in the Omnibus Clause, and breadth is not the same thing as ambiguity.  The Omnibus Clause is both "very broad" and "very clear."  *Yates*, *supra,* at ___ (KAGAN, J., dissenting) (slip op., at 15).  Lenity does not apply.

If the Court is concerned that the Omnibus Clause does not give defendants "fair warning" of what it prohibits, *ante,* at 7, I am hard pressed to see how today's decision makes things better. The Court outlines its atextual proceeding requirement in only the vaguest of terms. Under its interpretation, the prosecution must prove a "nexus" between the defendant's conduct and some "particular administrative proceeding." *Ante,* at 10. "[P]articular administrative proceeding" is defined negatively as "not . . . every act carried out by IRS employees in the course of their 'continuous, ubiquitous, and universally known' administration of the Tax Code." *Ante,* at 10–11. Further, the Government must prove that the proceeding was "reasonably foreseeable" to the defendant. *Ante,* at 11. "Reasonably foreseeable" is again defined negatively as "not . . . that the defendant knew the IRS may catch onto his unlawful scheme eventually." *Ibid.* It is hard to see how the Court's statute is less vague than the one Congress drafted, which simply instructed individuals not to corruptly obstruct or impede the IRS' administration of the Tax Code.

E

To be sure, §7212(a) is a sweeping obstruction statute. Congress may well have concluded that a broad statute was warranted because "our tax structure is based on a system of self-reporting" and "the Government depends upon the good faith and integrity of each potential taxpayer to disclose honestly all information relevant to tax liability." *United States* v. *Bisceglia*, 420 U. S. 141, 145 (1975). Whether or not we agree with Congress' judgment, we must leave the ultimate "[r]esolution of the pros and cons of whether a statute should sweep broadly or narrowly . . . for Congress." *United States* v. *Rodgers*, 466 U. S. 475, 484 (1984). "[I]t is not our task to assess the consequences of each approach and adopt the one that produces the least

mischief. Our charge is to give effect to the law Congress enacted." *Lewis* v. *Chicago*, 560 U. S. 205, 217 (2010).

The Court frets that the Omnibus Clause might apply to "a person who pays a babysitter $41 per week in cash without withholding taxes," "leaves a large cash tip in a restaurant," "fails to keep donation receipts from every charity," or "fails to provide every record to an account- ant." *Ante*, at 7. Whether the Omnibus Clause would cover these hypotheticals—and whether the Government would waste its resources identifying and prosecuting them—is debatable. But what should not be debatable is that the statute covers Marinello, who systematically shredded documents and hid evidence about his company's earnings to avoid paying taxes even after warnings from his lawyer and accountant. It is not hard to find similar cases prosecuted under the Omnibus Clause. See, *e.g., United States* v. *Sorenson*, 801 F. 3d 1217, 1221–1222 (CA10 2015) (defendant hid taxable income in elaborate system of trusts); *Floyd*, 740 F. 3d, at 26–27, 31–32 (de- fendant created elaborate scheme to avoid paying payroll taxes).

The Court, in its effort to exclude hypotheticals, has constructed an opening in the Omnibus Clause large enough that even the worst offenders can escape liability. In doing so, it failed to heed what this Court recognized in a similar case: "[T]he authority vested in tax collectors may be abused, as all power is subject to abuse. However, the solution is not to restrict that authority so as to un- dermine the efficacy of the federal tax system." *Bisceglia*, *supra,* at 146.

\*    \*    \*

Regardless of whether this Court thinks the Omnibus Clause should contain a proceeding requirement, it does not have one. Because the text prohibits all efforts to obstruct the due administration of the Tax Code, I respectfully dissent.