[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-15299
_____

D.C. Docket No. 2:16-cr-00326-MHT-SRW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICHARD LEE GRAHAM,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(December 4, 2020)

Before GRANT, MARCUS, and JULIE CARNES, Circuit Judges.

GRANT, Circuit Judge:

The IRS spent years trying to collect overdue taxes from Richard Graham. Five years into the process, Graham attempted to satisfy his tax obligations once and for all—with a fraudulent $3.6 million check known as an international bill of exchange. When he was caught, a jury convicted him of passing a fictitious financial instrument, in violation of 18 U.S.C. § 514(a)(2), and of corruptly endeavoring to obstruct the administration of the Internal Revenue Code, in violation of 26 U.S.C. § 7212(a). That second conviction is the main focus of this appeal.

Not long ago in this Circuit, the government could have convicted Graham under § 7212(a) by proving only that he (1) "knowingly tried to obstruct or impede the due administration of the internal revenue laws," and (2) "did so corruptly." *United States v. Croteau*, 819 F.3d 1293, 1307–08 (11th Cir. 2016). But recently the Supreme Court added a third element. Now, the government must also prove a "nexus between the defendant's conduct and a particular administrative proceeding, such as an investigation, an audit, or other targeted administrative action." *Marinello v. United States*, 138 S. Ct. 1101, 1109 (2018) (quotation marks omitted). The question for us is whether the IRS's collection activity qualifies as a "particular administrative proceeding." We hold that it does. Because there was sufficient evidence of a nexus to support Graham's conviction and because we

2

reject his laundry list of objections to the district court's evidentiary rulings, we affirm.

I.

Graham earned a fortune running bingo games. But from 2006 through 2009, he paid only a portion of his income taxes. Penalties and interest accrued on the unpaid taxes, and eventually the IRS came to collect.

The IRS assigned Revenue Officer Lawrence Barron to Graham's case. In 2009, Barron sent Graham a final notice of "intent to levy"—stating that the IRS planned to levy his assets and that it could file a notice of federal tax lien on his property. After that, Barron began making repeated contact with Graham and reported that he and his attorneys were always prompt in responding. Graham was not, however, prompt in making full payment. Instead, he would make smaller payments that did not satisfy his debt. In 2012, a second IRS officer, Linda Brown, took over the case and began sending regular lien and levy notices to Graham. Under Brown's supervision, the IRS confiscated and sold several pieces of Graham's real estate. But even these sales didn't satisfy the debt. In June 2014, the IRS sent him a notice of levy informing him that his tax liability totaled just under $3.6 million.

Around that time, Graham met Thomas Walker, who claimed to specialize in "credit repair." Walker told Graham that he knew of "some people" who could

"help use a bill of exchange" to pay off his taxes and promised to help for the low price of $10,000.

Graham paid the fee and Walker put him in contact with two men—Ben and James—who sent a packet of documents to Walker. In July 2014, Walker and Graham went together to the IRS building in Montgomery, Alabama, to deliver these documents, which included a $3.6 million check entitled an "international bill of exchange," a copy of the notice of levy that Graham had received a month earlier, and a signed statement that Graham was not an "individual" under the tax code and that he was "not subject to any revenue tax or tax withholding."

The IRS employee assisting Graham was skeptical about the bill of exchange's validity, so she privately consulted with her manager and a special agent. The special agent, agreeing that the check "looked suspicious," advised accepting but not processing it. The employee returned stamped copies of the documents to Walker and Graham and provided the originals to the special agent. Graham repeated this ruse three more times that summer—once at the Birmingham IRS office and twice at the Alabama Department of Revenue.

The international bills of exchange were indeed suspicious, and soon discovered to be fraudulent. A grand jury indicted Graham on one count of passing a fictitious financial instrument, in violation of 18 U.S.C. § 514(a)(2), and one count of corruptly endeavoring to obstruct the administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a).[1] Graham opted to go to trial and

---

[1] In 2018, the government sought a superseding indictment to ensure that the indictment complied with *Marinello v. United States*, 138 S. Ct. 1101 (2018).

4

was convicted on both counts.  The district court denied Graham's motion for judgment of acquittal and sentenced him to 48 months of imprisonment.  Graham now appeals, challenging the sufficiency of the evidence for his § 7212(a) conviction and several of the district court's evidentiary rulings.

## II.

We turn first to Graham's argument that there was insufficient evidence of a nexus between his actions and an administrative proceeding.  We review de novo the sufficiency of the evidence to support a conviction, affirming the jury's verdict if "any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt."  *United States v. Crabtree*, 878 F.3d 1274, 1284 (11th Cir. 2018) (quotation marks omitted).

The Omnibus Clause of § 7212(a) makes it a felony when a defendant "corruptly or by force . . . endeavors to obstruct or impede, the due administration of" the Internal Revenue Code.  *See* 26 U.S.C. § 7212(a).  District courts in this Circuit have traditionally informed juries that a conviction under this statute must be supported by two elements: that the defendant (1) "knowingly tried to obstruct or impede the due administration of the internal revenue laws," and (2) "did so corruptly."  *See, e.g.*, *Croteau*, 819 F.3d at 1307–08 (citing jury instructions).  The Supreme Court's recent decision in *Marinello v. United States* changed that.  138 S. Ct. at 1109.

In *Marinello*, the Supreme Court took issue with the potentially expansive range of conduct that could qualify as "obstruct[ing] or imped[ing], the due administration of" the Internal Revenue Code.  26 U.S.C. § 7212(a).  This phrase,

5

it noted, could transform any and all tax violations into felonies. *Marinello*, 138 S. Ct. at 1107. It could make a felon of any "person who pays a babysitter $41 per week in cash without withholding taxes, leaves a large cash tip in a restaurant, fails to keep donation receipts from every charity to which he or she contributes, or fails to provide every record to an accountant." *Id.* at 1108 (citations omitted). That, the Court surmised, Congress could not have intended. *Id.*

The Court's solution was to read a third element—a "nexus" element—into the statute. *Id.* at 1109. That is, it held that to "secure a conviction under the Omnibus Clause, the Government must show (among other things) that there is a 'nexus' between the defendant's conduct and a particular administrative proceeding, such as an investigation, an audit, or other targeted administrative action." *Id.* While it declined to "exhaustively itemize the types of administrative conduct that fall within the scope of the statute," it emphasized that the defendant must do something more than interfere with "routine, day-to-day work carried out in the ordinary course by the IRS, such as the review of tax returns." *Id.* at 1110. The obstructive act needed to have a "relationship in time, causation, or logic with the [administrative] proceeding." *Id.* at 1109 (quoting *United States v. Aguilar*, 515 U.S. 593, 599 (1995)) (alteration in original).

So, the question is, did Graham's submission of a falsified bill of exchange to the IRS have a "relationship in time, causation, or logic" with some administrative proceeding? Graham thinks not. He suggests that "liens, levies, and related notices" do not qualify as "administrative proceedings" under *Marinello*. A "proceeding," he argues, must "take place over a period of time, akin

to a grand jury proceeding or other investigatory proceeding," where there is "summoning of witnesses and documents" and "questioning under oath." And the IRS's tax collection activities do not bear those particular marks.

Our Court has not had occasion to further define the "nexus" requirement since *Marinello*. But we do not think the Court's definition of a "proceeding" was so narrow. The Supreme Court nowhere suggested that a defendant must interfere with a quasi-judicial proceeding—like Graham describes—to violate the Omnibus Clause. Indeed, the Court was careful not to identify exhaustively what qualified as an "administrative proceeding" or "other targeted administrative action." *Id.* at 1109–10. Its concern, instead, was to *exclude* relatively innocuous conduct from prosecution under the Omnibus Clause. *Id.* The government could not prosecute someone for interfering with "routine, day-to-day work carried out in the ordinary course by the IRS, such as the review of tax returns." *Id.* There had to be something more—some "targeted administrative action." *Id.* at 1109.

We need not draw a perimeter setting out what that "something more" encompasses. This is not a borderline case. For years, the IRS took targeted administrative action against Graham well beyond the "ordinary course" of the agency's interaction with taxpayers. It began to take specific steps to collect on Graham's tax debt in 2009. It assigned two revenue officers to his case over a five-year period. These officers issued him notices of liens and levies. They oversaw seizure and sale of some of his property. And only weeks before Graham submitted the international bill of exchange, the IRS sent him another notice of levy reminding him that he owed about $3.6 million. He even attached a copy of

this notice to the $3.6 million bill of exchange that he provided to the IRS. The IRS's regular and persistent contact with Graham went well beyond the "routine, day-to-day work" of the agency and we have no difficulty concluding that this collection action qualified as a "targeted administrative action." *See id.* at 1109–10.

Nor do we think there is any merit to Graham's second argument that no nexus existed. On appeal—for the first time—Graham argues that there was also no nexus between his submission of the bill of exchange and the IRS's collection action because his actions did not have the "natural and probable effect" of "doing anything to any lien, levy or seizure." In other words, since his plan was so bad that it had no chance of working, he should get off scot-free.

We don't buy it. Since Graham failed to raise this issue before the district court, we review this new challenge only for plain error. *United States v. Baston*, 818 F.3d 651, 664 (11th Cir. 2016). Neither the Supreme Court nor our Court has ever read a "likelihood of success" element into § 7212(a). Our Court has held that the "government is not required to prove that the administration of the internal revenue laws was actually obstructed or impeded, but *only* that the defendant corruptly attempted to do so." *Croteau*, 819 F.3d at 1308 (emphasis added).[2] When the "explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Lejarde-Rada*, 319 F.3d

---

[2] Though we decided *Croteau* before *Marinello*, nothing in the Court's decision alters this analysis.

1288, 1291 (11th Cir. 2003). Since Graham points to nothing in § 7212(a) itself nor any binding precedent requiring the government to show Graham's plan was likely to succeed, we must affirm the district court.

III.

We turn next to Graham's evidentiary challenges. The thrust of his trial defense was that he was the "victim of a fraud, not the perpetrator of one." He believes that the district court "gutted" his ability to offer this defense with several adverse evidentiary rulings and kept him from telling his "competing story." So on appeal, he challenges (1) the limitations placed on Thomas Walker's testimony; (2) exclusion of the government's expert witness's answer to a cross-examination question; and (3) exclusion of evidence that Graham made "good-faith" efforts to comply with the IRS and pay his debt. He also objects to the district court's admission of a past tax conviction as Rule 404(b) evidence.

We review preserved objections to evidentiary rulings for abuse of discretion. *United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010). But when a party failed to object to an evidentiary ruling at trial, we review only for plain error. Fed. R. Evid. 103(e); *United States v. Hesser*, 800 F.3d 1310, 1324 (11th Cir. 2015). "To find plain error, there must be: (1) error, (2) that is plain, and (3) that has affected the defendant's substantial rights." *Hesser*, 800 F.3d at 1324 (quotation omitted). And if we find that these conditions are met, we may exercise our discretion to correct a forfeited error, "but only if the error seriously affect[s]

9

the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation omitted) (alteration in original).

Graham argues that we should not review any of his evidentiary challenges under plain error review because—in all instances where he failed to offer argument—the district court sustained the government's objection and excluded Graham's evidence without hearing from the defense. Yet under the Federal Rules of Evidence, to preserve an objection to the district court's exclusion of evidence, the proponent is obligated to inform the court of the evidence's substance "by an offer of proof." Fed. R. Evid. 103(a)(2). This means that Graham needed to "first, describe the evidence and what it tends to show and, second, identify the grounds for admitting the evidence." *United States v. Adams*, 271 F.3d 1236, 1241 (10th Cir. 2001); *see also United States v. Ballis*, 28 F.3d 1399, 1406 (5th Cir. 1994) (a proponent must inform the court of what he "intends to show by the evidence and why it should be admitted," so that the appellate court can "adequately examine the propriety and harmfulness of the ruling").

Here, the district court may not have asked for argument on each government objection, but the record also contains no hint that Graham made any effort to provide the court with an offer of proof for certain excluded evidence. Indeed, we have previously rejected a similar argument where the defendant complained "that the district court did not allow him to proffer the evidence he would have sought to elicit from" a witness. *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1372 n.27 (11th Cir. 1994). In response, we "reaffirm[ed] our precedent stressing the importance of counsel making and courts accepting proffers

10

of evidence," including that our Circuit "will not even consider the propriety of the decision to exclude the evidence at issue, if no offer of proof was made at trial." *Id.* (quoting *United States v. Winkle*, 587 F.2d 705, 710 (5th Cir. 1979)). We therefore will review all arguments where Graham failed to proffer evidence only for plain error. Fed. R. Evid. 103(e).

## A.

Much of Graham's case hinged on Thomas Walker's testimony. Walker, after all, was the one who introduced Graham to Ben and James, who helped him obtain the fake international bills of exchange, who went to the Montgomery IRS building with Graham on July 11, and who "did all the talking" with the IRS employees that day. So it was through Walker that Graham planned to advance his "victim of a fraud" defense. He singles out three evidentiary rulings during Walker's testimony that, he claims, wrongly prevented him from advancing this defense.

*First*, the district court prevented Walker from testifying about whether he personally believed that the international bills of exchange were valid forms of payment. At trial, Graham's counsel tried to ask Walker whether he believed that the international bills of exchange "were valid forms of payment for Mr. Graham's taxes," whether Walker acted "in good-faith reliance on the advice Ben gave" him, and whether he felt he was "defrauded by Ben and James." The court sustained the government's objections that this testimony was irrelevant. Graham offered no

11

argument on these objections and moved on to other questions, so we review this argument now for plain error. *See* Fed. R. Evid. 103(e).

Under Rule 401 of the Federal Rules of Evidence, evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401(a)–(b). The question, then, is whether *Walker's* subjective belief that the bills of exchange were or were not genuine made it any more likely that *Graham* thought the bills were valid. Here, only on appeal, Graham suggests that if "Walker believed the documents were valid," it would be "more likely that Graham, too, believed the documents to be valid and was the victim" of Ben and James's fraud.

But how? Graham did not present evidence that Walker assured him of the instruments' authenticity. Maybe Walker was fooled by Ben and James; maybe he wasn't. What mattered at trial was what *Graham* knew and thought. The government had the burden of demonstrating that Graham acted "corruptly," which meant that he acted "knowingly and dishonestly with the specific intent to secure an unlawful benefit." *United States v. Dean*, 487 F.3d 840, 853 (11th Cir. 2007) (quoting Eleventh Circuit Pattern Jury Instructions, Criminal 97 (2003)). What Walker knew and thought had no bearing on Graham's own intent, particularly given that no evidence was ever offered to show that Walker expressed these thoughts to Graham. We have no quarrel with the district court's conclusion that

12

what Walker—who was not a co-defendant—"did or didn't do," what "he thought or didn't think," did not matter.

Even if it were relevant whether Walker felt he was defrauded or acted in good faith, Graham has not shown how exclusion of this evidence affected his substantial rights—an essential element of showing plain error. *United States v. Edwards*, 696 F.2d 1277, 1281 (11th Cir. 1983). Indeed, though this particular testimony was excluded, the district court did allow Walker to answer similar questions. The jury may not have heard what Walker thought about the documents, but they still heard his testimony that he was, supposedly, acting in good faith and that Graham didn't know what was happening. They just didn't believe it.

*Second*, Graham suggests that during Walker's testimony, the district court should have admitted documents that Walker and Graham allegedly received from Ben and James in November 2014—after the charged offenses occurred. The court also excluded this evidence on relevancy grounds.

Graham proffered at trial that the obvious falsity of the documents was "relevant to intent because it shows at some point, we realized that this may not be on the up and up," and the documents "triggered his realization." But Graham attempted to admit the evidence during Walker's testimony—not his own. And he never proffered that he told Walker that this was when the scales fell from his eyes and he realized that everything had been a hoax. At most, Walker could have testified that *he* suddenly realized he'd been scammed by Ben and James. Yet even that testimony suffers from the same problem as before: ultimately, it is

13

irrelevant what Walker believed, thought, or realized.  Unless he communicated those thoughts to Graham or Graham communicated similar concerns to Walker, none of this testimony goes to prove or disprove Graham's intent.  The district court specifically noted that the November 2014 documents *may* be relevant if Graham had testified that he "actually received this and that's when he started thinking something" was up.  But the documents were irrelevant during Walker's testimony.

*Third*, Graham claims that the district court should have let Walker tell the jury what Ben and James told him about the documents.  Graham's attorney asked Walker whether he "put Mr. Graham in connection with" Ben and James, which Walker affirmed.  The attorney then asked, "Now, ultimately, did you understand that there was some type of way to eliminate tax debt?"  Walker answered, "Yes, sir."  The prosecutor objected and the court struck the response, saying that Walker needed to "lay a foundation as to how he knows that's not predicated upon hearsay."  Graham's attorney agreed and moved on.  Now, on appeal, Graham claims that the district court improperly excluded the evidence because the "point, quite obviously, was not to prove the truth of what" Ben and James were saying about the international bills of exchange, but "to ask about Walker's 'understand[ing]' from them."  Again, because Graham failed to raise this issue below, we review only for plain error.

At the beginning of Walker's testimony, he affirmed that tax elimination "wasn't something [he] did, but [he] knew of a couple people" who handled that— Ben and James.  So, when Graham's attorney asked him if he understood that

14

"there was some type of way to eliminate tax debt," in context it appeared that Walker was relying on things Ben and James had told him in their conversations. In other words, Walker's answer required him to rely on hearsay. So, after the prosecutor objected, the district court instructed Graham's attorney to lay foundation for the answer. Rather than lay that foundation *or* explain to the judge that Ben and James's statements were not being offered for the truth of the matter asserted, the attorney acknowledged the court's point and moved on to other questions.

In doing so, Graham conceded that the statements were being offered for the truth of the matter asserted. He cannot switch tactics now to try to argue the statements should have been admitted on a different basis. Quite simply, when a party tries to admit evidence for one purpose, it cannot be plain error for the district court not to admit it for another, unnamed, purpose. *See United States v. Clotaire*, 963 F.3d 1288, 1297 (11th Cir. 2020) (no plain error to exclude evidence when the proponent "gave no indication that the email was offered for anything other than proof of the matter asserted" at trial). "No legal rule required the trial court to suggest" that Graham try to enter the evidence for something other than the truth of the matter asserted, "so its failure to do so was not error." *Id.*

\*     \*     \*

Graham may be unhappy about the ways that the district court restricted Walker's testimony, but the court did not prevent Graham from completing his story. What the court excluded was *Walker's* story—what Walker thought, believed, and realized. Had Graham drawn any connection between how Walker's

15

subjective belief impacted him, the result may have been different. But absent that, we cannot say that the district court erred here.

B.

The district court also did not err in admitting Graham's earlier misdemeanor conviction and plea agreement for failing to file a tax return. Though the government may not provide evidence of a crime or conviction to "prove a person's character" as a way of showing that the person acted in conformity with that character, it may offer this evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1)–(2). Graham's conviction was validly offered for at least one of these purposes.

Twelve years before his trial, Graham pleaded guilty to failing to file his 2002 tax return. In doing so, he acknowledged that he was obligated to file federal income tax returns. But among the documents that he submitted to the IRS in July 2014 was one that claimed that he was not an "individual" as defined by the tax code, "subject to the jurisdiction of the United States," or "subject to any revenue tax or tax withholding." In other words, the document he submitted to the IRS directly contradicted something he admitted in his earlier plea. This contradiction went to show that Graham had knowledge that the documents he provided to the IRS were false—indicating "absence of mistake" or "lack of accident." *See* Fed. R. Evid. 404(b)(2). The district court provided the jury with a limiting instruction—both when the evidence was introduced and in its final jury instructions—clarifying that the evidence was admitted only to show intent,

16

knowledge, and absence of mistake, not "as any type of character evidence to show that he did something before and he might do it again." The prior conviction, therefore, was properly offered as Rule 404(b) evidence.

## C.

Graham raises two final evidentiary issues. First, he challenges exclusion of an answer from the government's expert witness during cross-examination. Second, Graham argues that the district court improperly excluded several pieces of evidence that tended to show that he acted in good faith in his interactions with the IRS. The district court did not err in either of these rulings.

The government provided expert testimony from a U.S. Treasury Department employee about the fictitious international bills of exchange that Graham provided to the IRS. This expert described the bills of exchange to the jury, explaining which features made each one "look like a true financial instrument" and which elements indicated that the instruments were fictitious. On cross-examination, Graham's attorney asked whether it might be "easy" for an "average person" to be "taken in" by the fictitious bills. The government objected that the answer called for speculation and the court agreed. Graham's attorney immediately moved on to another question.

Graham now argues that the district court erred because the expert witness was qualified to answer this question. Again, because Graham's attorney failed to provide an offer of proof, we review for plain error. And again, that standard is fatal to Graham's argument. The government's witness may well have been qualified to testify about whether an "average person" could be fooled by the

17

fictitious instrument. But even if so, Graham has not shown that this error in any way affected his substantial rights, both because there was ample evidence that the bills appeared real in many respects and because the jury was able to see the bills and evaluate for themselves whether they—as average people—would be fooled. And so we cannot say that the district court reversibly erred.

Finally, Graham appeals the district court's exclusion of evidence of his "good faith desire to cooperate with the IRS, and an absence of obstructive intent, both before and after the summer of 2014." Graham tried to introduce evidence of his tax compliance after 2014, his refusal to appeal the assessments, liens, and levies issued by the IRS, and his refusal to file for bankruptcy while in debt to the IRS. He believes all this evidence shows that he had good-faith intent to pay the IRS debt.

But "[e]vidence of good conduct is not admissible to negate criminal intent." *United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991); *see also United States v. Ellisor*, 522 F.3d 1255, 1270–71 (11th Cir. 2008) ("specific acts of good character" are inadmissible under Federal Rules of Evidence 404(b) and 405(b) to prove the defendant acted in "conformity"). Graham tried to introduce this evidence to suggest that since he, on *other occasions*, complied with the IRS, on this occasion he must also have acted in conformity with his good character. *See United States v. Marrero*, 904 F.2d 251, 260 (5th Cir. 1990). Because any evidence tending to show conduct in conformity with good character is improper

18

under the Federal Rules of Evidence, the district court acted properly in excluding this evidence.

*    *    *

Graham hoped to use a fictitious bill of exchange to end his five-year saga with the IRS once and for all.  He ended up, instead, with two felony convictions. We have no doubt that five years of the IRS's targeted collection action qualified as an administrative proceeding, satisfying *Marinello*'s nexus requirement.  For that reason, and because we reject his challenges to the district court's evidentiary rulings, we **AFFIRM** Graham's convictions.