# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3405
_____

United States of America

*Plaintiff - Appellee*

v.

Barrett Prelogar

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: January 12, 2021
Filed: April 30, 2021
_____

Before SMITH, Chief Judge, KELLY and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Barrett Prelogar appeals following his conviction under 26 U.S.C. § 7212(a) for corruptly endeavoring to obstruct and impede the due administration of the tax laws. Prelogar argues the district court[1] erred by denying his motion to dismiss the

_____

[1]The Honorable Beth Phillips, Chief United States District Judge for the Western District of Missouri, adopting the report and recommendations of the

indictment in light of <u>Marinello v. United States</u>, 584 U.S. ___,138 S.Ct. 1101 (2018), and by denying his motion seeking relief for an alleged violation of the attorney-client privilege.  Prelogar further argues the evidence was insufficient to sustain his conviction, and the district court[2] constructively amended the indictment.  We find no error and we affirm.

## I.    BACKGROUND

Prelogar was the owner and chief executive officer of Winntech Digital Systems, Inc. ("Winntech"), which made electronic displays for retail stores and trade shows.  Winntech employed hundreds of people in the Kansas City area.  Winntech failed to pay any employment taxes for the 2002 tax year and the first two quarters of 2003.  The Internal Revenue Service ("IRS") determined that Prelogar and his business partner, Steve Matthews, were the "responsible persons," which meant they were personally liable for the tax debt and the Trust Fund Recovery Penalty ("TFRP") assessed by the IRS.  In 2005, Winntech, Prelogar, and Matthews signed an installment agreement, which required Winntech to pay $10,000 per month toward the outstanding TFRP debt.  In the installment agreement, the IRS deferred enforcement against Prelogar and Matthews while Winntech made the contemplated payments.

Prelogar filed his 2008 federal income tax return in October 2009.  Although he owed a tax liability of $120,103.00, Prelogar made no tax payments with his 2008 return.  Because Prelogar had outstanding personal tax debt, he was no longer in deferred action under the TFRP agreement, and a revenue agent was assigned to

Honorable John T. Maughmer, United States Magistrate Judge for the Western District of Missouri.

[2]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

investigate his ability to pay both the TFRP debt and the 2008 personal income tax. The IRS determined that from November 2009 through April 2011, Prelogar paid over $362,000.00 from a personal bank account at Commerce Bank towards certain personal assets, including: a house at Lake of the Ozarks; a house in Kansas City; a house in Leawood, Kansas; a Porsche; a Jeep; and a boat. During the same time period, Prelogar made no payments toward his 2008 personal tax liability.

Beginning in May 2010, the IRS initiated tax liens and levies on various accounts and assets held by Prelogar. In February 2011, David Emerick, Prelogar's corporate and personal accountant, received an IRS notice of intent to levy against Prelogar and his property. On May 24, 2011, the IRS executed a levy on Prelogar's Commerce Bank account. After the Commerce Bank levy, cash payments were made toward Prelogar's assets with, in addition to payments by Prelogar's wife and Winntech, direct cash payments and cashier's checks from Prelogar himself. In addition, Prelogar and Matthews made large cash withdrawals totaling more than $177,000.00 from Winntech's account at United Missouri Bank. For example, on June 1, 2011, Prelogar and Matthews made five separate $5,000.00 withdrawals at five different branches of the bank. In November 2011, an IRS representative told Emerick of the IRS's intent to issue liens and levies against Prelogar's property, and Emerick communicated the IRS's plan to Prelogar.

In 2012, Prelogar began working for a new company founded by his wife called Bare Skull Innovation, LLC ("Bare Skull"). Between 2013 and 2016, Bare Skull paid Prelogar in the form of paychecks that Prelogar cashed rather than deposited into a personal bank account.

Prelogar ultimately paid his 2008 personal tax liability in full, including penalties and interest. But, because the statute only allows collection of TFRP debt for 10 years, the IRS wrote off the amount still outstanding against Prelogar for his TFRP debt in July 2015, which totaled $263,959.27.

On August 8, 2017, Prelogar was charged in a two-count indictment. Count One charged Prelogar with tax evasion related to the TFRP payment and his 2008 personal tax liability, in violation of 26 U.S.C. § 7201; Count Two charged him with corruptly endeavoring to obstruct and impede the due administration of the tax laws, in violation of 26 U.S.C. § 7212(a). Count Two included allegations that Prelogar committed the following corrupt acts: (1) using corporate funds to pay his personal expenses; (2) structuring cash withdrawals from Winntech's accounts; and (3) cashing his Bare Skull paychecks, rather than depositing the funds into a personal account.

Prelogar filed a motion to dismiss both counts on various grounds, including that the indictment failed to state an offense in light of Marinello. The district court denied the motion. Prelogar filed a separate motion seeking a hearing to determine whether the government obtained privileged information from Prelogar's former attorney, Jim Wirken. The magistrate judge recommended that the motion be denied, and the district court adopted that recommendation.

At the close of evidence and prior to deliberations, Prelogar submitted a proposed jury instruction on structuring. The district court declined to give the instruction, choosing instead to give an alternative instruction submitted by Prelogar, which essentially defined structuring. The jury acquitted Prelogar on Count One and convicted him on Count Two. The district court sentenced Prelogar to an 18-month term of imprisonment followed by one year of supervised release. Prelogar was ordered to pay restitution in the amount of $263,959.27. Prelogar timely appeals.

## II. DISCUSSION

We review the sufficiency of an indictment *de novo*. United States v. Wearing, 837 F.3d 905, 910 (8th Cir. 2016). "The test of the sufficiency of an indictment is not whether it could not have been made more definite and certain, but whether it

contains the elements of the offense charged, and sufficiently apprises the defendant of what he must be prepared to meet . . . ." United States v. Tebeau, 713 F.3d 955, 962 (8th Cir. 2013) (quotation omitted). "An indictment which 'tracks the statutory language' is ordinarily sufficient." Id. (quoting United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008)).

Prelogar first argues the district court erred by denying his motion to dismiss Count Two because, after Marinello, the indictment failed to allege two essential elements of 26 U.S.C. § 7212(a)'s "Omnibus Clause." The Omnibus Clause prohibits "corruptly or by force or threats of force . . . obstruct[ing] or imped[ing], or endeavor[ing] to obstruct or impede, the due administration of" the tax laws. 26 U.S.C. § 7212(a). In Marinello, the Supreme Court considered the scope of the Omnibus Clause and determined that "the clause as a whole refers to specific interference with targeted governmental tax-related proceedings, such as a particular investigation or audit," rather than routine tax procedures such as the processing of returns. 138 S.Ct. at 1104. The Supreme Court thus held: "[T]o secure a conviction under the Omnibus Clause, the Government must show (among other things) that there is a 'nexus' between the defendant's conduct and a particular administrative proceeding, such as an investigation, an audit, or other targeted administrative action. That nexus requires a 'relationship in time, causation, or logic with the [administrative] proceeding.'" Id. at 1109 (quoting United States v. Aguilar, 515 U.S. 593, 599 (1995)). The government also must show the particular proceeding was "pending at the time the defendant engaged in the obstructive conduct or, at the least, was then reasonably foreseeable by the defendant." Id. at 1110. Because the trial judge did not instruct the jury that it must find Marinello knew he was under investigation, and that he intended to corruptly interfere with that investigation, the Supreme Court reversed Marinello's conviction.

Our court has applied Marinello in a case in which the defendant was charged with various tax crimes, including a violation of 26 U.S.C. § 7212(a). United States

v. Beckham, 917 F.3d 1059 (8th Cir. 2019). After *certiorari* was granted in Marinello, Beckham filed a motion to stay his trial pending the Supreme Court's decision. The district court denied the motion on the basis that the issue could be addressed through a special verdict form asking the jury whether Beckham committed a corrupt act after becoming aware the IRS was performing an audit and, if so, to identify unanimously what that corrupt act was. Beckham appealed his conviction, renewing his argument that the special verdict form did not cure the faulty jury instructions. In considering the jury instructions in light of § 7212(a) and Marinello, this court explained that while Marinello added two elements—a nexus and knowledge of a currently-pending or reasonably foreseeable proceeding—any error in instructing the jury was harmless because the overwhelming evidence in the case established both the nexus and knowledge requirements. Id. at 1064.

While Marinello identified what the government must "show" to "secure a conviction" under section 7212(a), see 138 S.Ct. at 1109, neither Marinello nor Beckham addressed whether the nexus and knowledge requirements must be charged in the indictment, nor did those decisions invite scrutiny of the elements charged. Marinello greatly relied on Aguilar, which proclaimed a "nexus" requirement for a similar omnibus clause under 18 U.S.C. § 1503(a) that prohibits endeavoring to obstruct the due administration of justice. 515 U.S. at 600. Like Marinello, the Aguilar opinion is silent on whether the nexus requirement must be included in the charging document. While our court has not decided this question subsequent to Aguilar, federal courts that have addressed the issue have found the nexus requirement is not required to be alleged in the indictment because it is "implicit." See, e.g., United States v. Collis, 128 F.3d 313, 317–18 (6th Cir. 1997); see also United States v. Sussman, 709 F.3d 155, 177 (3d Cir. 2013) (citing to Collis, 128 F.3d at 318 for principle that the nexus requirement is not a fourth element and instead can be addressed in jury instructions).

This interpretation is consistent with other Supreme Court decisions that have clarified statutory elements in conjunction the government's proof obligations. For example, in Rehaif v. United States, 588 U.S. ___, 139 S.Ct. 2191, 2200 (2019), the Supreme Court concluded that the government must prove, among other things, that a defendant had knowledge of his status as a prohibited person in felon-in-possession cases. After Rehaif, we found no error where the indictment charged a violation of 18 U.S.C. § 922(g)(5)(A) but failed to allege the defendant had knowledge of his status because the indictment tracked the statutory language. United States v. Jawher, 950 F.3d 576, 579 n.2 (8th Cir. 2020). Similarly, in Flores-Figueroa v. United States, 556 U.S. 646, 657 (2009), the Supreme Court held that in aggravated identity theft cases the government must prove the defendant had knowledge that the means of identification he unlawfully transferred, possessed, or used belonged to another person. We later upheld as sufficient an indictment that charged aggravated identity theft because, although the indictment did not plead knowledge as explained in Flores-Figueroa, it tracked the language of 18 U.S.C. § 1028A(a)(1). United States v. Dvorak, 617 F.3d 1017, 1026–27 (8th Cir. 2010).

Count Two charged Prelogar with "corruptly endeavor[ing] to obstruct and impede the due administration" of the tax laws, by committing certain specified acts, in violation of § 7212(a). The indictment "tracks the language of the statute" and "fairly informs the defendant of the charges against him." See Sewell, 513 F.3d at 821–22. We conclude that Marinello clarifies what must be proven to sustain a conviction under § 7212(a) but does not require that nexus and knowledge be charged in the indictment. The district court did not err in denying Prelogar's motion to dismiss Count Two.

Prelogar also argues the district court constructively amended Count Two when it failed to instruct the jury on the elements of structuring. "A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner . . . that the jury is allowed to convict the

defendant of an offense different from or in addition to the offenses charged in the indictment." United States v. Whirlwind Soldier, 499 F.3d 862, 870 (8th Cir. 2007). We review whether the evidence presented or "the jury instructions, taken as a whole, created a substantial likelihood that the defendant was convicted of an uncharged offense." United States v. Shavers, 955 F.3d 685, 694 (8th Cir. 2020) (quoting United States v. Buchanan, 574 F.3d 554, 564 (8th Cir. 2009)).[3]

Count Two charged Prelogar with corruptly endeavoring to obstruct the due administration of the tax laws. It alleged three categories of corrupt acts, including that Prelogar "structur[ed] cash withdrawals" from Winntech's account. The district court instructed the jury on the elements of § 7212(a) and included Prelogar's requested definition of structuring. Prelogar cites to no authority requiring the district court to instruct the jury that they could acquit on Count Two if they did not find all of the elements of structuring. Because the instructions neither altered the elements of the offense charged nor constituted a denial of Prelogar's constitutional right to indictment by the grand jury, we find no error. See Gill, 513 F.3d at 851.

Prelogar further argues his conviction is beyond the scope of Marinello because a conviction based on the government's "tax collection activity" resulted in an overbroad interpretation of the "particular administrative proceeding" requirement. We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government and accepting all reasonable inferences that can be drawn from the evidence in favor of the verdict. United States v. Ellis, 817 F.3d 570,

---

[3]A constructive amendment may be reversible error *per se* or may be subject to a harmless error analysis. United States v. Lasley, 917 F.3d 661, 664–665 & n.1 (8th Cir. 2019) (per curiam) (comparing United States v. Johnson, 719 F.3d 660, 668 (8th Cir. 2013) with United States v. Gill, 513 F.3d 836, 849–850 (8th Cir. 2008)). Because we find no constructive amendment of the indictment in this case, we need not resolve whether a constructive amendment is reversible error *per se* or reviewed for harmless error.

573 (8th Cir. 2016). Our review is highly deferential. Id. "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam). "[W]e will reverse a conviction only if no reasonable jury could have found the defendant guilty." Ellis, 817 F.3d at 573.

In Marinello, the Supreme Court explained that the "due administration" requirement in § 7212(a) "does not cover routine administrative procedures that are near-universally applied to all taxpayers, such as the ordinary processing of income tax returns. Rather, the clause as a whole refers to specific interference with targeted governmental tax-related proceedings, such as a particular investigation or audit." 138 S.Ct. at 1104. While our court has not yet analyzed the breadth of the "due administration" requirement, we are persuaded by the Eleventh Circuit's analysis in United States v. Graham, 981 F.3d 1254 (11th Cir. 2020). In Graham, the court determined that the Supreme Court did not so narrowly define the requirement so as to include only quasi-judicial proceedings; rather, the Supreme Court intended to exclude "relatively innocuous conduct" that did not rise to the level of "targeted administrative action." Id. at 1259. And, under facts similar to those in the record here, the IRS in Graham's case took "targeted administrative action" for years, well beyond the "ordinary course" of typical agency interaction with taxpayers, including the issuing of notices and liens, assignment of revenue officers, and seizure and sale of his property. Id. Due to the IRS's regular and persistent contact with Graham that went well beyond the "routine, day-to-day work" of the agency, the Eleventh Circuit concluded the collection action qualified as a "targeted administrative action." Id. at 1259–60.

Like in Graham, the evidence in this case showed the IRS was in "regular and persistent contact" with Prelogar over several years, beginning with a lien filed in Jackson County, Missouri, in May 2010. In February 2011, the IRS issued a Notice of Intent to Levy, and Prelogar's personal accountant received a collection/levy notice

that same month. The specific collections activities continued until the IRS wrote off Prelogar's TFRP debt in July 2015, but even then a criminal investigation against Prelogar was pending, until his indictment in 2017. As in Graham, the IRS engaged in targeted administrative action against Prelogar for some years. Prelogar's argument that the IRS activity was beyond the scope of Marinello is unavailing.

To the extent Prelogar argues the government cannot show a "nexus" between the allegedly corrupt acts and the due administration of the tax code, the particular administrative proceeding need not be pending at the time of the obstructive conduct if such a proceeding was "reasonably foreseeable." Marinello, 138 S.Ct. at 1110. The evidence showed Prelogar knew of the collection activities in May 2011, which continued through July 2012, and that a criminal investigation against Prelogar began in 2013. That Prelogar used corporate funds to pay his personal expenses, structured cash withdrawals, and cashed, without depositing, his paychecks during the time periods alleged undisputably creates a nexus between the IRS collection activities and the alleged acts. That Prelogar may also present another reason for his conduct is immaterial. As our court has previously held, "[i]f evidence consistent with guilt exists, we will not reverse simply because the facts and the circumstances may also be consistent with some innocent explanation." United States v. Griffith, 786 F.3d 1098, 1102 (8th Cir. 2015). The district court did not error in denying the motion for judgment of acquittal.

Finally, Prelogar challenges the denial of his motion to dismiss the indictment or disqualification of the prosecution team on the basis of an alleged violation of the attorney-client privilege. On a motion to dismiss for outrageous government conduct, we review the district court's legal determinations *de novo* and its factual findings for clear error. United States v. Williams, 720 F.3d 674, 685 (8th Cir. 2013) (citing United States v. Nieman, 520 F.3d 834, 838 (8th Cir. 2008)). In order to establish a colorable claim of governmental intrusion into an attorney-client relationship, the defendant must prove: "(1) the government's objective awareness of an ongoing,

personal attorney-client relationship between its informant and the defendant; (2) deliberate intrusion into that relationship; and (3) actual and substantial prejudice." Id. at 686 (citations omitted).

In March 2017, just a few months shy of his indictment, Prelogar's former counsel James Wirken agreed to be interviewed by the prosecution team, after Prelogar's then-current counsel suggested Prelogar may have an advice-of-counsel defense. Wirken attended the interview with his own attorney, and Wirken invoked the attorney-client privilege several times. Wirken, an attorney with 45 years of practice experience, later testified that the government never solicited privileged information, and that he did not believe any "mental impressions" were given. Significantly, the record does not identify any privileged communications that were disclosed to the government. Further, Prelogar has not identified any "actual and substantial prejudice" resulting from any communications that were disclosed to the government. The district court did not err in denying Prelogar's motion to dismiss or for disqualification of the prosecution team.

## III.  CONCLUSION

We affirm the judgment of the district court.

_____